```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION
```

SUSAN KELLY,                    }
                                }
    Plaintiff,                  }
                                }       CIVIL ACTION NO.
v.                              }       03-AR-2557-S
                                }
MEDIA GENERAL, INC., d/b/a      }
WIAT-CBS 42,                    }
                                }
    Defendant.                  }

## MEMORANDUM OPINION

On June 22, 2005, this court, on its own motion, directed the plaintiff in this action, Susan Kelly ("Kelly"), to file documents itemizing the evidence and pay calculations by which the jury could have arrived at its figure of $28,500[1] in damages under the Equal Pay Act ("EPA"). This request was made in light of still pending Rule 50(a) motions by the defendant, Media General, Inc. ("Media General"), challenging the sufficiency of Kelly's claim brought pursuant to the EPA. Both Kelly and Media General responded in writing to the court's request, and the issues were orally argued at this court's regular motion docket on July 8. In viewing the Rule 50(a) motions, the court faces two primary issues: (1) can Kelly recover any damages under the EPA if she was in fact paid more than her male comparators when performance bonuses are added in; and, (2) does the evidence, in light of the relevant law,

---

[1] This figure was uncannily similar to the figure written on the blackboard by the attorney for Susan Kelly.

support the jury's finding of damages in the amount of $28,500. In the court's considered view, the answer to both questions is "yes".

Media General contends that Kelly is entitled to no damages under the EPA because she was, in fact, paid more than both of her male comparators. Media General presented evidence indicating that if performance bonuses are added to her base compensation package Kelly received more pay than either J.D. Huey ("Huey") or David Parker ("Parker"). Media General concedes that Kelly's base compensation package was $130,000, while Huey's was $140,000, and Parker's was $150,000.[2] Kelly, however, received a $32,000 bonus in 2003, based mostly on high demand for ad time in an election year. This bonus made Kelly's actual, total compensation higher than that of Huey or Parker. Thus, the issue is entirely whether Kelly's larger bonuses obviate the clear EPA violation which would result from a comparison of the base compensation packages.

The court finds that Kelly is entitled to recover damages under the EPA despite her bonus. Media General's argument is appealing at first blush, but the court finds that it is ultimately supported neither by logic nor precedent. It relies upon its contention that the definition of "wages" under the EPA includes bonuses. This is a truism found in 29 C.F.R. § 1620.10. Media

---

[2]The court is somewhat confused about how, and why, "commission" should be counted as part of the total base compensation package. The court would be content to accept that the relevant consideration, here, is the guaranteed portion of the salary. However, since neither side has articulated this argument, and the court has more questions than answers in this regard, the court will consider $130,000, $140,000 and $150,000 the relevant figures rather than $91,000 and so on.

General cites this regulation for the proposition that disregarding the bonus is "not only deceptive, but also impermissible under the EPA." This is an overly strong reading of the regulation. 29 C.F.R. § 1620.10 provides in relevant part:

> Under the EPA, the term "wages" generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The terms includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance or some other name.

The court reads this provision a bit differently from the way Media General reads it.  In the court's opinion, this definition of "wages" is for the purpose of consideration of what kind of fringe benefits or remuneration are actionable under the EPA as "wages". Looking at most of the case law citing this provision, courts have used this provision to determine that when male and female employees receive different bonuses, allowances, use of company cars, etc., those remunerations for employment are also actionable although they do not fall under the common sense definition "wages." So the focus here, it seems, is on the definition of the word "includes" and not on the definition of the word "wages." This court believes to say the term "wages" "includes" these other forms of remuneration does not imply that all must be added up to form a total calculation of wages.

Media General cites a variety of cases from across the United States. While these cases constitute "persuasive" authority, none

of them are particularly persuasive.[3] The rationale behind reading 29 C.F.R. § 1620.10 to require a total compensation approach is unclear based on the cases cited. Media General concedes that Kelly's base compensation package was less than those of Parker and Huey. A jury apparently found that Media General was not able to prove one of the available affirmative defenses to such a claim. Given this court's reading of the statute and the regulations, Kelly's receipt of a performance bonus, available to her male comparators but not achieved by them, does not change the claim significantly.[4] Kelly has established a *prima facie* case under the

---

[3]For instance, *Marting v. Crawford & Co.*, cited by Media General, the court was engaging in rank speculation via *dicta. Marting,* 203 F.Supp. 2d 958, 966 (N.D. Ill. 2002). All of the cases, much like Media General, merely assert that you must add up all total compensation, citing 29 C.F.R. § 1620.10 for that proposition. Again, this court will note that this has to be a misreading or misunderstanding of the regulation. There is no mention of adding up, or totaling the values of the forms of remuneration anywhere in the regulation. Further, given that this regulation defines the term "wages" for use in the statute, there are many circumstances where Media General's definition would not make any sense. The cases adopting the total compensation approach appear like a chain moored to nothing, each case saying that it is "persuaded by the reasoning" of the previous cases when in fact none of the cases include any **actual reasoning** as to why the statute or the regulation demands the total compensation approach. To the extent such a reading of the regulation is appropriate, the regulation itself may run into the problem of being an unreasonable interpretation of the statute. *See, e.g.*, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

[4]This court sees the situation as similar to the hypothetical noted during the trial when this argument was originally raised. A female plaintiff would be able to bring a claim where her total compensation was higher than her male comparator where she was paid at a lower rate than the male comparator, but worked more hours than she, or achieved more sales than he. *See Bence v. Detroit Health Corporation*, 712 F.2d 1024 1027 (6th Cir. 1983)(finding a *prima facie* case even though female plaintiff was paid more total compensation, because her commission rate was lower than her male counterpart). Media General attempts to distinguish this case by saying that in the present circumstances Kelly has failed to prove that her commission rate was lower than her male counterparts. While the case is certainly distinguishable factually, the holding of the case seems to be antithetical to Media General's reading of the statute and regulations. The "end all be all" of EPA jurisprudence **is not** the total compensation received by the plaintiff *vis a vis* her male comparators.
    Realizing the problem that the *Bence* line of reasoning puts it in, Media General has argued that Kelly did not prove that its performance bonuses were

EPA, and is entitled to damages.

The amount of the economic damages Kelly is entitled to, however, is a different question. Media General argues that Kelly's damages should be reduced because they are based only on the highest paid comparator. Kelly's damages calculation is based entirely on the difference between her compensation and that of Parker. Huey's compensation package, which was $10,000 less than Parker's[5], is not used to determine the amount of Kelly's unequal pay. Media General believes the appropriate way to determine Kelly's damages is to use the average of the compensation packages of Parker and Huey and then subtract Kelly's compensation.

Media General cites a number of cases which, for the most part, stand for the proposition the proper test for determining the

---

somehow related to more work, or more success, but rather were blind luck based on an election year boom in ad revenue. There is evidence in the record that could support either point, and a reasonable jury could have found either way. The point for the present purposes is that a defendant should not avoid liability for actions which admittedly would violate the EPA because blind luck dictated a bonus for the plaintiff, but not her comparators, which is greater than the relevant difference in pay between them. This court believes that a jury is entitled to look at the starting point, prior to bonuses, to see if men and women were being paid equally.
    If Kelly had started at the same point as Parker or Huey, she would have likely made even more in 2002. The court cannot require the jury to be blind to the possible value of the "total compensation package." Even if total compensation is the rule, surely the actual difference in guaranteed salary is actionable where the male employee, with the same performance record as the female employee, would have received more money than the female employee actually did receive. In the present circumstances, if Parker had achieved similar results to Kelly, he would have received a similar bonus to Kelly, putting him still roughly $20,000 a year ahead of her. Going beyond Media General's assertion that the bonus received by Kelly was blind luck, to the extent it was *earned* by Kelly through harder work or better performance Media General's reading of the statute becomes even less equitable, and further calls into questions Media General's interpretation of the regulation and the statute under *Chevron*.

[5]There is some dispute between Kelly and Media General about how much Huey actually made. Media General says $135,000 and Kelly says $140,000.

base line to compare a plaintiff's salary to is the "average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors... that affect the wage scale." *Hein v. Oregon College of Education*, 718 F.2d 910, 916 (9th Cir. 1983).  None of the cases cited by Media General for this proposition are binding on this court. As Media General itself notes the Eleventh Circuit Pattern Jury Instructions include no such instruction, and none was given, or even requested in this case. The jury was unaware of any such limitation on its ability to award damages. In light of this, it seems fair to say that the jury itself determined that Parker was the more comparable of the two male employees, and thus, that Kelly was entitled to base her damages on Parker's salary alone. This was not a circumstance of "manipulative calculation" where a plaintiff cherry picks the comparator with the highest salary because Kelly gave the jury evidence of both of the available comparators and then asked it to use Parker's salary as the most relevant of the comparators. *Cf. Hein*, 718 F.2d at 916. Media General certainly could have distinguished the comparators and argued that Huey was more comparable than Parker, and that his salary should be used. It chose not to do so, failing to engage Kelly's calculation in closing arguments. In light of this, the averaging of Parker and Huey's salary to determine damages is not necessary in a Rule 50(a) analysis.

Finally, all parties agree that the difference in "base

compensation package" between Parker and Kelly was $20,000 in 2002.[6] In 2003, that difference narrowed as Kelly received a raise to $134,600. The presentation of damages given on page six of Kelly's memorandum of damages is accepted by the court as reasonable based on the evidence. Therefore, Media General's Rule 50(a) motion will be denied.

    DONE this ____20___ day of July, 2005

                                                          _____
                                                          WILLIAM M. ACKER, JR.
                                                          UNITED STATES DISTRICT JUDGE

---

[6]Again, it warrants noting that both sides seem to believe that the difference in commission available to Kelly and Parker is part of the compensation package as it should be measured (i.e. both sides cite $130,000 as the amount of Kelly's pay, rather than $91,000 which was her guaranteed salary). The court is not sure this makes sense, and would have been open to argument on that point. However, Media General's acceptance of such an argument indicates, at least to this court, that this the way that Media General would characterize its compensation package, making it the relevant way to determine whether or not Kelly was compensated equally with her male comparators.